J. S02009/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                           :        PENNSYLVANIA
          v.              :
                           :
JARROD LaMONTE PENN,      :      No. 536 EDA 2016
                           :
          Appellant     :

Appeal from the Judgment of Sentence, January 21, 2016,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0004623-2015

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED FEBRUARY 28, 2017**

Jarrod LaMonte Penn appeals from the judgment of sentence of January 21, 2016, following his conviction of driving under the influence ("DUI") – general impairment.[1]  We vacate and remand for resentencing.

The trial court summarized the facts of this matter as follows:

> On May 2, 2015, at approximately 1:55 a.m. Officers Dave Ford and Shane Laird of the Marcus Hook Police Department were on duty in a marked patrol vehicle.  At or about that time, they were behind a maroon Chevy Impala bearing a Delaware State registration in the area of 10th and Church Streets in Marcus Hook, Delaware County, Pennsylvania.  Both vehicles were traveling in the eastbound lane of traffic.  Officer Ford testified that he observed the subject vehicle swerve to the left crossing over the double yellow line into the oncoming westbound lane of traffic.  Shortly thereafter it swerved back to the right and

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

subsequently on two (2) occasions swerved to the right and crossed over the solid white line that the officer referred to as the fog line on the right side of the roadway onto the shoulder. (N.T. 1/21/16 p. 7.) At that time, the officer activated his emergency lights and conducted a traffic stop of the vehicle. The driver and sole occupant of the vehicle was the Appellant, Jared Penn. (N.T. 1/21/16 p. 8.)

Subsequently, the officer testified that when he approached the Appellant, who rolled down his window, he immediately detected an odor of alcoholic beverages coming from the breath and person of the Appellant, that the Appellant had glassy, bloodshot eyes, spoke with slurred speech and appeared lethargic. (N.T. 1/21/16 p. 9.) The officer testified that he asked the Appellant to exit the vehicle and conducted three (3) field sobriety tests all of which the Appellant failed. (N.T. 1/21/16 pp. 9-12.) While the Appellant was standing outside of the car, the officer noticed additionally that the Appellant's "coordination was off" and his "comprehension wasn't there" and he then asked the Appellant to submit to a preliminary breath test (PBT)[2] and he refused. (N.T. 1/21/16 p. 12.) The

---

[2] **(k) Prearrest breath test authorized.--**A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirements of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e) [(relating to refusal)].

75 Pa.C.S.A. § 1547(k).

officer subsequently testified that based on his training, experience, and observations of the defendant that evening, he felt that the Appellant was under the influence of alcohol at that time to such a degree wherein he could not safely operate a motor vehicle. The Appellant was subsequently placed under arrest and transported to the police station. (N.T. 1/21/16 p. 13.) At the station, Appellant was given his implied consent warning and he refused the chemical test. (N.T. 1/21/16 pp. 14-16.)

The Appellant subsequently testified that he had advised the police officers that he was not drinking (N.T. 1/21/16 p. 51), that he could not properly perform the field sobriety tests due to his medical issues including lower back arthritis, retina issues, and prior surgery wherein a rod was implanted in his leg. (N.T. 1/21/16 pp. 53-54.) He further testified that he refused the PBT test because the officer took it out of his trunk, it was not wrapped up and he felt it was not sanitary. (N.T. 1/21/16 pp. 54-55.) He further testified that he never was shown the DL26[3] refusal form (N.T. 1/21/16 p. 59) and that he did in fact wish to have a blood test conducted. (N.T. 1/21/16 pp. 61-62.)

Trial court opinion, 6/7/16 at 1-3.

On January 21, 2016, following a non-jury trial, appellant was found guilty of one count of DUI – general impairment. Appellant waived a pre-sentence investigation and received the mandatory sentence of 72 hours to 6 months' imprisonment and a $1,000 fine pursuant to 75 Pa.C.S.A.

---

[3] The DL–26 form contains warnings of the potential consequences of a person's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year, and that if convicted of violating 75 Pa.C.S.A. § 3802(a), the individual will face more severe penalties because of the refusal.

§ 3804(c)(1).[4]     No  post-sentence  motions  were  filed;  however,  on

February 19, 2016, appellant filed a timely notice of appeal.  Appellant was

ordered  to  file  a  concise  statement  of  errors  complained  of  on  appeal

pursuant  to  Pa.R.A.P.  1925(b)  within  21  days  and  timely  complied  on

March 10, 2016, challenging the sufficiency of the evidence to support his

conviction of DUI – general impairment under 75 Pa.C.S.A. § 3802(a)(1).

On June 7, 2016, the trial court filed a Rule 1925(a) opinion addressing the

sufficiency issue.

---

[4]    **(c)    Incapacity;   highest    blood    alcohol; controlled substances.--**An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:

(1)    For a first offense, to:

(i)    undergo  imprisonment  of  not  less  than  72  consecutive hours;

(ii)    pay  a  fine  of  not  less  than  $1,000  nor  more  than  $5,000;

(iii)    attend an alcohol highway safety  school  approved  by the department; and

(iv)    comply  with  all  drug  and  alcohol            treatment requirements       imposed under  sections  3814  and  3815.

On appeal, appellant raises the following issue for this court's review:

> I)    Whether the sentence was illegal where the trial court relied on [appellant]'s refusal of a blood test to impose the tier three mandatory minimum of 72 hours for a first offense DUI which is in direct contravention to the ruling in the recent United States Supreme Court case of ***Birchfield v. North Dakota***[, ___ U.S. ___, 136 S.Ct. 2160 (2016)] which invalidates any criminal sanction assessed for refusing to take a blood test[?]

Appellant's brief at 7 (unnecessary capitalization deleted).

Initially, we note that appellant did not raise this issue in the court below; in his Rule 1925(b) statement, he only challenged the sufficiency of the evidence to support the conviction. However, the issue goes to the legality of appellant's sentence, which is non-waivable. ***See Commonwealth v. Barnes***, ___ A.3d ___, 2016 WL 7449232 at *5 (Pa. Dec. 28, 2016) ("[W]here the mandatory minimum sentencing authority on which the sentencing court relied is rendered void on its face, and no separate mandatory authority supported the sentence, any sentence entered under such purported authority is an illegal sentence for issue preservation purposes on direct appeal."); ***Commonwealth v. Edrington***, 780 A.2d 721, 723 (Pa.Super. 2001), citing ***Commonwealth v. Vasquez***, 744 A.2d 1280 (Pa. 2000) (application of a mandatory sentencing provision implicates the legality of the sentence, not the discretionary aspects of the sentence). In addition, ***Birchfield*** was decided on June 23, 2016, after appellant's sentence but during the pendency of the instant appeal. Where a United

States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." **Schriro v. Summerlin**, 542 U.S. 348, 351 (2004).

In **Birchfield**, as in this case, the defendant refused a blood test after being read his implied consent warnings.[5] He was advised that his refusal to undergo blood alcohol content ("BAC") testing would expose him to criminal penalties. **Birchfield**, 136 S.Ct. at 2170. Birchfield pled guilty to a misdemeanor violation of the North Dakota refusal statute but argued that the Fourth Amendment prohibited criminalizing his refusal to submit to the test. **Id.** at 2170-2171. The United States Supreme Court agreed and reversed Birchfield's conviction, holding that a State may not criminalize a motorist's refusal to comply with a demand to submit to blood testing.

The **Birchfield** Court distinguished between breath and blood tests, which it found to be significantly more intrusive. **Id.** at 2184. The Court determined that with regard to blood tests, the police must either seek a warrant or show exigent circumstances. **Id.** The Court in **Birchfield** also rejected the argument that warrantless blood tests are justified based on the driver's legally implied consent to submit to them:

---

[5] As recounted above, appellant testified that he was never given his implied consent warnings and, in fact, wanted to submit to a blood test. The trial court, sitting as finder-of-fact, found appellant's testimony to be not credible. The trial court determined that the officers complied with the implied consent law and that appellant refused to submit to chemical testing. (Notes of testimony, 1/21/16 at 71.)

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id.* at 2185 (citations omitted).

The Commonwealth concedes that appellant's mandatory minimum sentence under Section 3804(c)(1)(i) for refusal was illegal under **Birchfield**. We agree. Appellant cannot be subject to enhanced criminal penalties for refusal to submit to a blood test. **See also Commonwealth v. Evans**, \_\_\_ A.3d \_\_\_, 2016 WL 7369120 at *8 (Pa.Super. Dec. 20, 2016) (vacating the judgment of sentence and remanding for a re-evaluation of the appellant's purported consent where the appellant only consented to the warrantless blood draw after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties, in violation of **Birchfield**).[6] Therefore, it is necessary to remand for resentencing without consideration of the mandatory minimum sentence in Section 3804(c)(1)(i).

---

[6] The Supreme Court in **Birchfield** consolidated three separate cases, one of which was petitioner Steve Michael Beylund's case. After Beylund's arrest for DUI, the officer informed him of North Dakota's implied consent advisory

Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017

---

and that "test refusal in these circumstances is itself a crime." ***Birchfield***, 136 S.Ct. at 2172. Beylund then agreed to the requested blood draw, and testing revealed a BAC of 0.250%, more than three times the legal limit. ***Id.*** Beylund appealed, principally arguing that his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime. The North Dakota Supreme Court found that Beylund's consent was valid, emphasizing that North Dakota's implied consent advisory was not misleading because it truthfully related the penalties for refusal. The ***Birchfield*** Court rejected this rationale:

> The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be determined from the totality of all the circumstances, we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

***Id.*** at 2186 (citation and quotation marks omitted).